WILLIAMS PATENT CRUSHER & PULVERIZER CO. v. PENNSYLVANIA
CRUSHER CO.

(Circuit Court of Appeals, Third Circuit.   November 28, 1910.)

No. 1,376.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—DUMPING CAGE FOR CRUSH-
ERS AND PULVERIZERS.

The Williams patent, No. 843,729, for a dumping cage for crushers and
pulverizers, was not anticipated and discloses invention.   Claims 1 and 2
also *held* infringed.

Appeal from the Circuit Court of the United States for the Eastern
District of Pennsylvania.

Suit in equity by the Williams Patent Crusher & Pulverizer Com-
pany against the Pennsylvania Crusher Company.   Decree for de-
fendant (176 Fed. 576), and complainant appeals.   Reversed.

Frederick R. Cornwall, Henry N. Paul, Jr., and Joseph C. Fraley,
for appellant.

Meyers, Cushman & Rea (George W. Rea, of counsel), for appel-
lee.

Before BUFFINGTON and LANNING, Circuit Judges, and
CROSS, District Judge.

LANNING, Circuit Judge.   This appeal presents two questions:
First, whether the Williams patent, No. 843,729, for an improvement
in dumping cages for crushers and pulverizers, is valid; and, second,
whether, if valid, the patent has been infringed by the defendant.
The Circuit Court concluded that there was no infringement, and,
without considering the question of validity, the bill was dismissed.
We shall consider, first, the question of validity.

Two claims of the patent are in suit.   They are set forth in full in
the opinion of the Circuit Court, reported in 176 Fed. 576.   Both of
them are combination claims.   The first is a combination of these
elements:   (1) A casing; (2) a shaft arranged horizontally in the
casing and carrying pivotally mounted hammers; (3) a frame pivotally
mounted in the casing below said shaft, the pivot being located below
the grinding surface when the frame is in operative position; (4) a
rigid grinding surface carried by said frame; and (5) a flexible device
connected to said frame and winding mechanism for said flexible de-
vice.

The first, second, and fourth of these elements are in the prior
Borton patent, No. 759,856, for improvements in pulverizers, breakers,
or disintegrators.   Borton also has in his combination a frame piv-
otally mounted in the casing below the shaft, but it is contended that
the pivot is not "located below the grinding surface when the frame
is in operative position," as in the patent in suit.   The location of the
pivot on which the frame swings is not referred to in the specification
of the patent in suit, nor was it referred to in any claim of the applica-
tion when it was first filed in the Patent Office.   The application was

filed July 24, 1905, and the present claim 1 was substituted for the prior claim 1 on October 25, 1906. In the letter of the applicant's attorneys accompanying the substituted claim they said:

"Another feature of applicant's machine which has been brought out in new claim 1 is that the pivot for the frame is located below the grinding surface which the frame carries, so that when the frame is swung on its pivot the grinding surface will assume an approximately vertical position, as shown in Figure 1, and thus discharge the load quickly and overcome the possibility of any of the material remaining on the grinding surface."

In the patent in suit the pivot, as shown by Figure 1, is horizontally below any part of the grinding surface. In Borton it is not. But in Borton, as well as in the patent in suit, it is obvious, from a mere inspection of the figures, that if the end of the frame opposite to the pivoted end be disengaged from its holding device the frame will swing down on its pivot into an approximately vertical position, and thus discharge the load quickly and overcome the possibility of any of the material remaining on the grinding surface. Furthermore, the grinding surface of the machine is the inner or upper surfaces of the plates or bars which constitute the grating through which the broken or pulverized material passes. In Borton, as well as in the patent in suit, the pivot on which the frame carrying the grinding surface swings is radially further from the shaft than is the grinding surface, and, as already stated, in either case, when the frame is allowed to swing freely on its pivot, it will assume approximately a vertical position.

We therefore find in Borton the substance of the third element of the patent in suit. But its functions are not those of the patent in suit. In Borton the functions of the pivot are to allow the free end of the frame to be adjusted by means of a screw so as to bring the frame into closer or more remote relation to the beaters or hammers, and to allow the free end to drop so that the gratebars may be removed or changed. There is no suggestion in Borton that his machine is so constructed as to facilitate the dumping of its contents. It is not surprising, therefore, that the fifth element of the patent in suit, by which the contents of the crusher may, when the machine becomes choked, be almost instantaneously dumped, and the frame be then easily raised again to operative position, is not found in Borton. The specification of the patent in suit declares that:

"This invention relates to a new and useful improvement in dumping cages for crushers and pulverizers, the object being to construct a cage in such manner than when the machine chokes it is possible to dump the contents thereof without raising the cover and removing the material from the top."

By the fifth element in the patent in suit, the operator may, when the machine becomes choked, lift the pawl out of its position in the ratchet wheel, and allow the frame to drop and discharge the contents of the machine, and with his flexible device (a chain) and winding mechanism he may then bring the frame back to its operative position. This combination in the art is not anticipated by Borton.

Nor do we think it is anticipated by Fuller's patent, No. 517,381, for improvements in pulverizing machines. The device in it for dumping the contents of the pulverizer is comparatively simple, but it is not the combination of the patent in suit. It is far from it.

We have found nothing anticipatory of the combination of the patent in suit anywhere in the prior art, and we are of the opinion that the first claim of the patent is valid. Without quoting the elements of the combination described in the second claim, it is sufficient to say that we think it valid, for the same reasons that we consider the first claim valid.

We are of the opinion, also, that the defendant infringes. The defendant's machine contains a combination which differs in no essential respect from the combination of the patent in suit. It is true that the pivot of the defendant's frame is not horizontally below the grinding surface; but it is radially further from the shaft than the grinding surface, and it performs precisely the function of the pivot in the patent in suit.

It is urged on behalf of the defendant that its frame does not drop to an approximately vertical position. It will do so, however, if the chain or flexible device at the free end of the frame be long enough, or if the housing or casing be not so constructed as to prevent it from doing so. At all events, it falls far enough to dump the contents to such an extent as to free the machine when it is choked. It has a hand wheel, a sprocket wheel, and a weight so related to one another as to make a plain mechanical equivalent for the winding mechanism for the flexible device of the patent in suit. The combination of the defendant's machine is the combination of the patent in suit, except as to the fifth element of the patent in suit, and for that element a plain mechanical equivalent has been substituted.

We cannot agree with the conclusion of the court below that "the device used by the defendant is not a dumping cage," or that the arrangement of the defendant's device is intended merely "for the purpose of adjusting the grinding surface to the hammers as they shorten from wear." In the stipulation of counsel contained in the record it is admitted, concerning the defendant's machine, that:

"If the pawl is released, the cage, assisted by the weight, swings on its pivot rod into such position that the plate or plates of which it is made may be repaired or removed, or, in the event of any foreign materials, such as bodies of iron, etc., entering the machine, the material resting on said cage may be conveniently picked over for the removal of said foreign bodies."

This admission shows that the cage drops far enough at least to relieve the machine when it is choked. As it drops, it is obvious that the contents of the machine will be at least partially dumped. We think the defendant's cage is a dumping cage. And as to the suggestion that the arrangement in the defendant's machine "is intended for the purpose of adjusting the grinding surface to the hammers as they shorten from wear" the answer is that, while that is true, the arrangement of the complainant's machine secures the same result. Mr. Williamson, the complainant's expert, says, and we think his statement is correct, that the complainant's cage "may, at will, and with convenience and promptness, be swung from an open position, and easily and quickly moved short distances with reference to the hammers for the purpose of adjustment." It is true that the actuating device of the defendant's machine differs from that of the complainant's machine;

but it differs from it only as a mechanical equivalent differs from the thing for which the equivalent is substituted.

We are of the opinion that the patent in suit is valid, and that claims 1 and 2 are infringed. The decree of the Circuit Court will therefore be reversed, and a new decree entered, awarding an injunction and the usual accounting. The appellant is entitled to costs.